UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANTHONY E. VEIGN AND<br>CAROL VEIGN | § §<br>§ | CIVIL ACTION NO: |
| *Plaintiffs* | § § | |
| v. | § § | |
| FOREST RIVER, INC., AND<br>DIXIE MOTORS, L.L.C. | § §<br>§ | |
| *Defendants* | § § | |
| | § § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I. Parties

1. Plaintiffs, **ANTHONY E. VEIGN** and **CAROL VEIGN**, now and have been at all times material hereto residents of the State of Louisiana.

2. Defendant, **FOREST RIVER, INC.**, hereinafter "COACHMEN," is a company authorized to do and doing business in the State of Louisiana whose agent for service of process is CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, LA 70808.

3. Defendant, **DIXIE MOTORS, L.L.C.**, hereinafter "DIXIE MOTORS," is company authorized to do and doing business in the State of Louisiana whose agent for service of process is T. Jay Seale, III, 200 N. Cate Street, Hammond, LA 70401

### II. Jurisdiction

4. This Court has federal question jurisdiction over the lawsuit under the Magnuson-

Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that this dispute involves predominant issues of federal law. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202. The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

5.   Venue is proper in this district under 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

6.   All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

7.   On August 15, 2014, Plaintiffs purchased a new 2015 COACHMEN LEPRECHAUN bearing VIN 1GB6G5CG2E1147356, hereinafter "LEPRECHAUN," from DIXIE MOTORS. The LEPRECHAUN was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8.   The sales price of the LEPRECHAUN was $80,956.06, excluding finance charges. Plaintiffs made a down payment in the amount of $5,000.00. The total cost of the vehicle to Plaintiffs including finance charges will be over $150,000.00.

#### B.   Implied Warranties

9.   As a result of the sale of the LEPRECHAUN by Defendants to Plaintiffs, an implied

warranty of merchantability arose in the transaction which included the guarantee that the LEPRECHAUN would pass without objection in the trade under the contract description; and that the LEPRECHAUN was fit for the ordinary purpose for which such recreational vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

12. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the LEPRECHAUN occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the LEPRECHAUN had, in fact, repaired the defects.

13. Plaintiffs' purchase of the LEPRECHAUN was accompanied by express warranties offered by Defendant, COACHMEN, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the LEPRECHAUN.

14. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the COACHMEN's warranty booklet and owners manual.

### D. Actionable Conduct

15. In fact, when delivered, the LEPRECHAUN was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to: WATER LEAKS IN CAB OVER BED WHICH PREVENTS PLAINTIFFS FROM USING THE RV.

16. Since purchase, Plaintiffs have returned their LEPRECHAUN to Defendants and authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the LEPRECHAUN, the more significant and dangerous conditions were not repaired. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the LEPRECHAUN continues to this day to exhibit some or all of the non-conformities described herein.

17. The defects experienced by Plaintiffs with the LEPRECHAUN substantially impaired its use, value and safety.

18. Plaintiffs directly notified all Defendants and each of them of the defective conditions of the LEPRECHAUN on numerous occasions. Plaintiffs notified Defendants that they wanted a rescission of the sale of the LEPRECHAUN but Defendants have failed and refused to buy back Plaintiffs' defective LEPRECHAUN.

**COUNT 1: VIOLATIONS OF THE LOUISIANA REDHIBITION LAWS**

19. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

20. The LEPRECHAUN is a "thing" under La. Civil Code Articles 2520, et seq.

21. COACHMEN is a "manufacturer" under La. Civil Code Articles 2520, et seq.

22. DIXIE MOTORS is a "seller" under La. Civil Code Articles 2520, et seq.

23. Plaintiffs are a "buyer" under in La. Civil Code Articles 2520, et seq.

24. The defects described in the LEPRECHAUN vehicle meet the definition of a redhibitory defect as defined in La. Civil Code Articles 2520, et seq.

25. Plaintiffs have provided the Defendants sufficient opportunity to repair their defective vehicle.

26. Plaintiffs have performed each and every duty required of them under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendants, as herein alleged.

27. The hidden defects in the LEPRECHAUN existed at the time of sale, but were not discovered until after delivery. The LEPRECHAUN is not usable and neither Plaintiffs nor a reasonable prudent buyer would have purchased the LEPRECHAUN had they known of the defects prior to the sale.

28. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitute a breach of the implied warranties under Louisiana law, and entitles Plaintiffs to a rescission of the sale, return of the purchase price, plus all collateral costs of the sale, finance charges, insurance premiums, and out of pocket expenses.

29. Under Louisiana Redhibition laws, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become

necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

30. Plaintiffs reallege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

31. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

32. Defendants, COACHMEN, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

33. The LEPRECHAUN is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

37. The express warranties pertaining to the LEPRECHAUN are a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

34. The actions of Defendants in failing to tender the LEPRECHAUN to Plaintiffs free of defects and refusing to repair or replace the defective LEPRECHAUN constitutes a breach of the written and implied warranties and hence a violation of the Magnuson-Moss Warranty Act.

35. Plaintiffs have performed all things agreed to and required of their under the sales contract and warranty terms, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

36. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged in an amount in excess of $150,000.00

according to proof at trial.

37. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### COUNT 3:  NEGLIGENT REPAIR

36. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

39. On numerous occasions after the sale, Plaintiffs delivered the LEPRECHAUN to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

40. On each such occasion, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted the repairs of the LEPRECHAUN pursuant to their obligations under the express and implied warranties.  Defendants owed a duty of care to Plaintiffs to perform those repairs on the LEPRECHAUN in a good and workmanlike manner within a reasonable time.  The Defendants breached this duty to Plaintiffs.

41. Defendants' attempted repairs of Plaintiffs's LEPRECHAUN were done so negligently, carelessly, and recklessly as to substantially impair the LEPRECHAUN 's use, value, and safety in its operation and use.  At no time was any repair attempt on Plaintiffs's LEPRECHAUN fully and completely repaired by the Defendants, nor were many of the defective conditions fixed

or significantly improved by the Defendants' repair attempts. Nonetheless, each time Plaintiffs picked up the vehicle after the Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied upon these statements by the Defendants.

42.     As a direct and proximate result of Defendant's negligent failure to repair the LEPRECHAUN within a reasonable time or within a reasonable number of attempts, Plaintiffs were unable to use their LEPRECHAUN for weeks at a time. As a further direct and proximate result of Defendants' failure to repair the LEPRECHAUN in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the LEPRECHAUN in for further repair attempts and to leave the LEPRECHAUN for periods of time at great inconvenience to Plaintiffs.

43.     The damages Plaintiffs have suffered as a direct and proximate result of Defendants' negligence exceed $150,000.00.

**VI.     Damages**

44.     The conduct described above has been and is a producing and proximate cause of damages to Plaintiffs.

45.     Plaintiffs' damages include rescission of the sale including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, damages, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of judicial demand, until paid, and for all costs of these proceedings.

46.     The damages Plaintiffs have suffered as a direct and proximate result of Defendants' actions exceed $150,000.00.

### VII.     Request for Rescission

47.     Plaintiffs seeks the remedy of rescission of the sales contract.

48.     Plaintiffs revoke their acceptance of the LEPRECHAUN for the reason that its defects substantially impair its use, value, and safety to Plaintiffs and the acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of the Defendants that the defects in the LEPRECHAUN would be repaired, and no reasonable prudent buyer would have purchased the LEPRECHAUN with knowledge of these defects prior to the sale. Accordingly, Plaintiffs seek a cancellation of the sales contract and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiffs also seek cancellation of the debt and offers to return the LEPRECHAUN to the Defendants.

### VIII.     Attorney Fees and Costs

49.     Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### IX.     Prayer for Relief

50.     For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.     For general, special and actual damages according to proof at trial;

  b Rescinding the sale of the 2015 COACHMEN LEPRECHAUN bearing VIN 1GB6G5CG2E1147356 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

  c. For incidental and consequential damages according to proof at trial;

  d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

  e. Any diminution in value of the LEPRECHAUN attributable to the defects;

  f. Past and future economic losses;

  g. Prejudgment and post-judgment interest;

  h. Attorney fees;

  I. Costs of suit, expert fees and litigation expenses; and

  j. All other relief this Honorable Court deems appropriate.

## X. Demand for Jury Trial

51. Plaintiffs hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ Richard C. Dalton

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rdalton746@aol.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFFS